IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Niki McCoy,                                                Case No. 3:22-cv-00807

    Plaintiff,                                      Judge James G. Carr

            v.                                        **ORDER**

RFS Charitable Foundation,

    Defendant.

This is an employment dispute. Plaintiff, Niki McCoy, asserts several claims against her former employer, RFS Charitable Foundation ("RFS"): race, gender, and sexual orientation discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 *et seq.*, and, as to race discrimination, analogous provisions of Ohio law, R.C. § 4112.01 *et seq.*, (Counts I-III); retaliation for raising complaints of race, gender, and sexual orientation discrimination under Title VII and analogous provisions of Ohio law (Counts IV-V); failure to pay overtime in violation of the Ohio Wage Act, R.C. § 4111.03, (Count VI); retaliation for raising complaints regarding failure to make overtime payments, also under the Ohio Wage Act, R.C. § 4111.13 (B), (Count VII); and retaliation for reporting her supervisors' allegedly criminal acts in violation of Ohio's protections for whistleblowers, R.C. § 4113.52, (Count VIII).

RFS asserts several counterclaims against McCoy: conversion (Count I), spoilation (Count II), and civil theft (Count III) under Ohio law for retaining a company-issued laptop after RFS demanded its return and wiping its data; and fraudulent misrepresentation (Count IV), breach of fiduciary duty (Count V), and faithless service (Count VI) under Ohio law for submitting fraudulent documentation in the course of employment duties.

Pending is McCoy's motion to dismiss Counts I, III, IV, V, and VI of RFS's counterclaims for failure to state a claim under Fed. R. Civ. P. 12(b)(6), which was filed on July 8, 2022. (Doc. 11). On August 2, 2022, RFS filed its opposition to the motion, (Doc. 13), and, on August 15, 2022, McCoy filed her reply in support, (Doc. 14).

For the following reasons, I grant RFS's motion in part and deny it in part.

## Background

### 1. Factual Allegations

Rather than setting forth the facts relevant to all claims and counterclaims in this case, I focus my discussion on the facts specific to the counterclaims that McCoy moves to dismiss.

RFS is a charitable foundation with its principal place of business in Lucas County, Ohio. (Doc. 5, pgID 119). RFS offers mental health case management services for minors. (*Id.*, pgID 119-21). From January 19, 2021 to September 8, 2021, RFS employed McCoy as a Case Manager—specifically for minor clients at Toledo Public School's Robinson Achievement Center. (*Id.*, pgID 119-20).

RFS alleges that McCoy accrued multiple unexcused absences and failed to complete, or to complete in a timely manner, client paperwork over the course of her employment. (*Id.*, pgID 120). Due to these performance issues, on September 8, 2021, RFS terminated McCoy.[1] (*Id.*).

Also on September 8, RFS told McCoy to return her employer-issued laptop device. (*Id.*). However, McCoy left RFS's offices that day with her laptop. (*Id.*). On September 10, RFS's legal counsel wrote a letter to McCoy demanding the return of laptop and the preservation of all

---

[1] McCoy's account of her termination differs substantially from RFS's account. In McCoy's telling, RFS had discriminatory and retaliatory motivations for terminating her—ones that give rise to McCoy's Amended Complaint. (*See* Doc. 1-5). However, and solely for the purposes of this Order, I construe the facts in the light most favorable to RFS.

"documents, communications, emails, text messages, direct messages or other records" related to her former employment at RFS. (*Id.*, pgID 122; Doc. 5-1, pgID 127-28). McCoy did not return it until September 16, 2021, eight days after RFS had first demanded its return. (Doc. 5, pgID 119). RFS inspected the laptop and discovered that McCoy had wiped all its data and installed a new operating system. (*Id.*).

Also on September 16th, RFS discovered that, on September 2, 2021, McCoy submitted falsified progress notes through RFS's electronic health record system. (*Id.*, pgID 121). The notes stated she accompanied a minor client and the client's mother to a therapy appointment. (*Id.*, pgID 121, 124). RFS learned this information was inaccurate from the client's mother. (*Id.*).

### 2. Procedural History

On March 4, 2022, McCoy filed her original Complaint in the Lucas County Court of Common Pleas, alleging failure to pay overtime in violation of the Ohio Wage Act, R.C. § 4111.03, and retaliation in violation of the Ohio's Whistleblower Statute, R.C. § 4113.52, for reporting her supervisors' allegedly criminal acts. (Doc. 1-1, pgID 19-22). On May 4, 2022, McCoy amended her complaint to add the six additional counts that I have noted *supra*. On May 18, 2022, RFS filed a notice to remove the case to this Court. (Doc. 1).

On June 3, 2022, RFS filed its Answer to McCoy's Amended Complaint along with its counterclaims, detailed *supra*. (Doc. 5). On July 8th, McCoy filed her motion to dismiss RFS's claims for conversion, civil theft, fraudulent misrepresentation, breach of fiduciary duty, and faithless service for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Doc. 11).

### Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

When considering a Rule 12(b)(6) motion, I must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). A plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555. I can consider exhibits attached to the complaint without converting the motion to dismiss into a motion for summary judgment, "so long as [the exhibits] are referred to in the complaint and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011); *see also* Fed. R. Civ. P. 10 ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Under Fed. R. Civ. P. 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The party must therefore "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 F. App'x 979, 982-83 (6th Cir. 2017) (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)).

**Discussion**

4

McCoy contends that each cause of action should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. 11). I will address each claim in turn.

### 1. Conversion

In Ohio, the tort of conversion is "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Revere Plastic Sys., LLC v. Plastic Plate, LLC*, 509 F. Supp. 3d 986, 1002 (N.D. Ohio 2020) (Knepp, J.) (quoting *Joyce v. Gen. Motors Corp.*, 551 N.E.2d 172, 175 (Ohio 1990). A conversion claim has three elements: (1) the [counter-plaintiff] had ownership or right of possession of the property at the time of the conversion; (2) the [counter-defendant] converted the property by wrongful act or disposition of [counter-plaintiff's] property; and (3) damages resulted. *RAE Assocs., Inc. v. Nexus Commc'ns, Inc.*, 36 N.E.3d 757, 765 (Ohio 10th Dist. 2015) (citation omitted); *see also Revere Plastic Sys., supra*, 509 F. Supp. 3d at 1002 (citation omitted).

McCoy initially had rightful possession of RFS's property. So, RFS must show: "(1) [the company] demanded return of the property from the possessor after the possessor exercised dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner." *Tabar v. Charlie's Towing Serv., Inc.*, 646 N.E.2d 1132, 1136 (Ohio 8th Dist. 1994). RFS has sufficiently stated its conversion claim.

There is no dispute that RFS owned the laptop, which McCoy concedes was "company-issued." (Doc. 11, pgID 155).

RFS also has sufficiently plead that McCoy wrongfully converted the laptop and the data and operating system contained therein. McCoy refused RFS's initial demand to return the laptop by leaving RFS's premises with it on the day of her termination. (Doc. 5, pgID 121). RFS,

5

through its counsel, again demanded the return of the laptop (and the preservation of all data contained therein), but McCoy took six more days before returning it—with all its data erased and a new operating system installed. (*Id.*, pgID 119; Doc. 5-1, pgID 127-28).

Finally, RFS has sufficiently stated the last element of its conversion claim: damages. RFS has not articulated any damages stemming from the delayed return of the laptop, but it has—albeit scantly—with respect to the deleted data and replaced operating system. McCoy correctly observes that RFS's counterclaim is light on details regarding the significance and extent of damages from these changes to the laptop, (*See* Doc. 11, pgID 158), but RFS need not flesh out those issues to meet its initial pleading burden. simply because a specific damage amount has not been pleaded. *See Escalante v. Tobar Constr., Inc.*, No. 8:18-CV-00980-PX, 2019 WL 109369, at *6 (D. Md. Jan. 3, 2019) (denying 12(b)(6) motion even though "a specific damages amount has not been pleaded"). RFS has sufficiently stated damages to survive dismissal at this stage by virtue of noting the loss of its property—*i.e.* the laptop's data and operating system. *See Edna Norton & Redbird Cent., Inc. v. Pam Popper & Goldmark Sec.*, No. 89AP-906, 1990 WL 83985, at *13 (Ohio 10th Dist. June 19, 1990) ("In an action for conversion, plaintiff is entitled to recover the full value of the property converted.") (citations omitted).

Ohio courts have recognized claims of conversion in similar circumstances. In *Edna Norton, supra*, the defendant erased "computer files" of the plaintiff, a former business partner. 1990 WL 83985, at *2. The files contained records of the plaintiff's clients. *Id.* at *6. The jury found the defendant liable for conversion, and the Tenth District of the Court of Appeals affirmed the judgment. *Id.* at *2, *16.

6

The defendant in *Staffilino Chevrolet, Inc. v. Balk* deleted customer files, including those "which would represent future business," from the computer of his employer, the plaintiff. 813 N.E.2d 940, 952-53 (Ohio 7th Dist. 2004). The trial court found the defendant liable for conversion, and the Seventh District of the Court of Appeals affirmed. *Id.* at 953-54.

In *Bush v. Signals Power & Grounding Specialists, Inc.*, an employee, shortly before quitting, deleted a "research library of industry data and information," which he had created and stored on his employer's computer. No. 08 CA 88, 2009 WL 3087202, at *1 (Ohio 5th Dist. Sept. 25, 2009). Following a bench trial, the trial court dismissed the employer's counterclaim for conversion, but the Fifth District of the Court of Appeals reversed the dismissal and remanded the claim to the trial court to determine the amount of damages. *Id.* at *2, *4.

Considering these analogous Ohio cases, I find that RFS has met its pleading burden to assert a claim for conversion. McCoy's reliance on *Revere Plastic, supra*, to argue otherwise is unavailing. (Doc. 11, pgID 157-58). That case involved the alleged conversion of physical washer/dryer parts, *Revere Plastic, supra*, F. Supp. 3d at 1002, and I find *Edna Norton*, *Staffilino*, and *Bush*, all of which recognized conversion claims for digital data deletion, to be more factually relevant to the case at hand. Additionally, the court in *Revere Plastic* analyzed a conversion claim for the purposes of summary judgment—a different inquiry from whether a claimant states a plausible claim on the face of a pleading. *See id.* at 1006-07.

Therefore, I deny McCoy's motion to dismiss RFS's conversion claim.

### 2. Civil Theft

In Ohio, "[a]nyone injured in person or property by a criminal act has, and may recover full damages . . . ." R.C. § 2307.60(A)(1). A claimant may therefore "recover damages from any person who willfully damages the owner's property *or* who commits a theft offense, as defined in

section 2913.01 of the Revised Code, involving the owner's property. R.C. § 2307.61(A) (emphasis added). R.C. § 2913.01, in turn, lists violations of R.C. §§ 2913.02 and 2913.04 as theft offenses.

R.C. § 2913.02(A) provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . [w]ithout the consent of the owner or person authorized to give consent . . . ."

R.C. § 2913.04(A) provides that "[n]o person shall knowingly use or operate the property of another without the consent of the owner or person authorized to give consent." Relatedly, R.C. § 2913.04(B) states that "[n]o person, in any manner and by any means . . . shall knowingly gain access to . . . any computer . . . without the consent of . . . the owner of the computer . . . ."

RFS has sufficiently stated its claim under both theories of liability set forth in R.C. § 2307.61(A): willful damage of property and commitment of a theft offense.

RFS's willful damage theory is straightforwardly plausible on the face of the counterclaim. RFS alleges that, on the day of her termination, McCoy "intentionally left RFS's offices with the laptop," despite RFS's demand that she return it. (Doc. 5, pgID 120). RFS further alleges that McCoy "deleted the data on the laptop and installed a new operating system." (*Id.*). These allegations of data deletion and replacement of the operating system suffice to support a claim for McCoy's willful damage of the laptop. McCoy argues that RFS has not alleged any damages, *i.e.* how McCoy "injured" RFS under R.C. § 2307.60(A)(1), (Doc. 14, pgID 186-87), but RFS has met its pleading burden in this regard for the same reason it has sufficiently stated the damages element of its conversion claim.

The same factual allegations giving rise to RFS's willful damage theory suffice for a plausible claim that McCoy committed a theft offense under R.C. §§ 2913.02 and 2913.04.

8

RFS's allegations indicate that McCoy exerted control over the laptop without RFS' consent when she refused RFS's initial return demand and modified it by deleting the data and replacing the operating system. These allegations state a theft offense under R.C. § 2913.02. Likewise, they state a theft offense under R.C. § 2913.04(A) and (B) due to McCoy's knowing access and use of the laptop without RFS's consent.

McCoy points to *Durham v. Niffenegger* to support her motion for dismissal. No. 1:18-cv-0091, 2019 WL 1050018, *10 (S.D. Ohio, March 5, 2019); (Doc. 11, pgID 158-59). In that case, the Southern District of Ohio granted a motion to dismiss the plaintiff's civil theft claim but under vastly different circumstances than the facts RFS alleges. The court dismissed the claim against the defendants in that case because the plaintiff failed to explain how the defendants' "*receipt*" of allegedly stolen property satisfied the elements of civil theft. *Durham*, 2019 WL 1050018, at *10 (emphasis added). RFS alleges much more than McCoy's mere receipt of RFS's laptop; it alleges McCoy's active steps to retain and alter the laptop without RFS's consent.

Nor am I convinced by McCoy's argument that RFS' civil theft claim should fail because RFS never pursued a criminal action against McCoy following her eventual return of the laptop. (Doc. 11, pgID 159). McCoy has pointed to no legal authority for the proposition that a civil theft claim fails in the absence of criminal prosecution.

Therefore, I deny McCoy's motion to dismiss RFS's civil theft claim.

### 3. Fraudulent Misrepresentation

As discussed *supra*, RFS must meet the heightened pleading standards for an allegation of fraud under Fed. R. Civ. P. 9(b). Additionally, the Sixth Circuit sets forth six elements for fraudulent misrepresentation under Ohio law:

> (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at

9

> hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) followed by justifiable reliance upon the representation or concealment by the other party, and (6) a resulting injury proximately caused by the reliance.

*Milner v. Biggs*, 522 F. App'x 287, 294 (6th Cir. 2013) (citing *Funk v. Durant*, 799 N.E.2d 221, 224 (Ohio 5th Dist. 2003).

RFS's allegation of fraud meets the heightened pleading standard of Fed. R. Civ. P. 9(b). RFS specifies a fraudulent statement: McCoy's representation in her progress notes that she accompanied a minor client and the client's mother to a therapy session. (Doc. 5, pgID 124). It identifies McCoy as the speaker. (*Id.*). It states the time (September 2, 2021) and place (RFS's electronic record system) that McCoy made the fraudulent statement. (*Id.*). Finally, RFS states that the statement was fraudulent because the client's mother later informed it that McCoy had not accompanied her child and her to the therapy session. (*Id.*). RFS has therefore cleared the Rule 9(b) pleading bar. *See William Beaumont Hosp. Sys., supra*, 677 F. App'x at 982-83.

That said, RFS must also plead all the specific elements of a fraudulent misrepresentation claim. RFS properly alleges that McCoy made a representation in the form of the progress notes that she submitted, so it has stated the first element of the claim. (Doc. 5, pgID 124). RFS alleges that McCoy made the representation falsely, and I infer McCoy's knowledge of the falsity and her intent to mislead RFS. Those are the only logical conclusions if McCoy did not, in fact, accompany the minor client to the therapy session. (*Id.*). Therefore, RFS has stated the third and fourth elements of the claim.

RFS fails, however, to plead any facts indicating that McCoy's false representation was material (the second element), that RFS justifiably relied on it (the fifth element), or that RFS suffered any damages because of its reliance (the sixth element). In its counterclaim, RFS merely

10

recites those elements in a boilerplate fashion. (*Id.*, pgID 124). In its opposition, RFS cites to *Hitachi Med. Sys. Am., Inc. v. Horizon Med. Grp.* for the proposition that Rule 9(b) does not require it "to allege damages with particularity in the complaint." No. 5:07CV02035, 2008 WL 11380212, at *4 (N.D. Ohio Feb. 8, 2008) (Lioi, J.). But *Hitachi* predates *Iqbal, supra*, by a year and makes no reference to the plausibility pleading standard from the latter that requires more than "a formulaic recitation of the elements of a cause of action." 556 U.S. 662, 678 (2009) (quoting *Twombley, supra*, 550 U.S. at 555). *Twombley* and *Iqbal* require more than RFS's bare statement that it "suffered damages" due to McCoy's misrepresentation. (Doc. 5, pgID 124). In any case, RFS sets forth no factual allegations supporting the elements of materiality and justifiable reliance.

I will, however, give leave *sua sponte* to RFS to amend its complaint to address these pleading deficiencies. As McCoy concedes in her reply, (Doc. 14, pgID 187), RFS does set forth some additional factual allegations in its opposition, which appear relevant to materiality, justifiable reliance, and damages. It states that McCoy's misrepresentation cost RFS in the form of "wages improperly paid to McCoy," "lost billings" and "non-monetary reputational damages." (Doc. 13, pgID 179).

Fed. R. Civ. P. 15(a)(2) states that the "court should freely give leave [for a party to amend its pleading] when justice so requires." *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[T]his mandate is to be heeded."). This is so that cases can "be tried on their merits rather than the technicalities of the pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982). However, I "may deny leave to amend if the amendment is futile, there is lack of notice to adverse parties, or there is evidence that the movant is acting in bad faith." *Heath v. Highlift*

11

*Equip., Ltd.*, No. 1:19-CV-134, 2020 WL 5506572, at *1 (S.D. Ohio Sept. 11, 2020) (internal quotations and citations omitted).

RFS can cure its pleading defects by incorporating the additional facts it states in its opposition regarding the costs it incurred due to McCoy's misrepresentation in the course of her job performance. RFS can plausibly show that the misrepresentation is material to its decision to pay wages to McCoy and that, because McCoy was an RFS employee, it was justified in relying on her representation. Payment of wages to McCoy, lost billings, and reputational damages are all factually plausible statements of damages. Therefore, I anticipate that an amendment of RFS's complaint on these points would not be futile. There is no lack of notice to McCoy in the case of any proposed amendment, nor is there any evidence that RFS's pleading deficiencies are in bad faith.

I therefore grant McCoy's motion to dismiss RFS's fraudulent misrepresentation claim without prejudice to RFS's ability to amend its counterclaim on the same, as noted *supra*.

### 4. Breach of Fiduciary Duty

Under Ohio law, a claimant can establish a breach of fiduciary duty by showing: "(1) the existence of a duty arising from a fiduciary relationship, (2) the failure to observe the duty, and (3) an injury resulting proximately therefrom." *Puhl v. U.S. Bank, N.A.*, 34 N.E.3d 530, 536 (Ohio 12th Dist. 2015).

"In some cases, an employee may have a fiduciary relationship with his or her employer, but not all employees are fiduciaries." *Swartz v. Oracle Corp.*, 787 F. Supp. 2d 686, 693 (N.D. Ohio 2011) (Lioi, J.) (citing *Laurel Valley Oil Co. v. 76 Lubricants Co.*, 797 N.E.2d 1033, 1039 (Ohio 5th Dist. 2003) (internal quotations omitted). The Ohio Supreme Court has held that, to determine whether an employee is a fiduciary, "emphasis should be placed upon whether the

12

assigned job duties require, as essential qualifications over and above technical competency requirements, a high degree of trust, confidence, reliance, integrity and fidelity." *State v. Massien*, 926 N.E.2d 1282, 1290-91 (Ohio 2010). Thus, employees who are "assigned duties of a routine character do not involve the degree of discretion or trust necessary to be considered a fiduciary." *Swartz, supra*, 787 F. Supp. 2d at 694 (N.D. Ohio 2011).

In its counterclaim, RFS alleges that McCoy had a fiduciary duty to it simply by virtue of her status as its employee. (Doc. 5, pgID 124). RFS alleges no facts about the employment relationship that would suggest that it ever placed an exceptional "degree of trust, confidence, reliance, integrity, and fidelity" in McCoy. *Massien, supra*, 926 N.E.2d at 1290-91. There is no plausible allegation that McCoy had a fiduciary duty to RFS.

Even if RFS were to establish that McCoy had a fiduciary duty to it, I would still grant McCoy's motion to dismiss this claim because RFS does not contend that McCoy's submission of one set of falsified progress notes rises to the level of a breach of any fiduciary duty.

I therefore grant McCoy's motion to dismiss RFS's breach of fiduciary duty claim.

### 5. Faithless Servant

In Ohio, the faithless servant doctrine states:

> [D]ishonesty and disloyalty on the part of an employee which permeates his service to his employer will deprive him of his entire agreed compensation, due to the failure of such an employee to give the stipulated consideration for the agreed compensation. Further, as public policy mandates, an employee cannot be compensated for his own deceit or wrongdoing. However, an employee's compensation will be denied only during his period of faithlessness.

*Foley v. Am. Elec. Power*, 425 F. Supp. 2d 863, 873 (S.D. Ohio 2006) (quoting *Roberto v. Brown Cnty. Gen. Hosp.*, 571 N.E.2d 467, 468 (Ohio 12th Dist. 1989)).

RFS has not met its pleading burden to show that dishonesty and disloyalty permeated McCoy's conduct as an employee. I disagree with RFS's contention that it has alleged the submission of false documentation "on more than one occasion." (Doc. 13, pgID 181). At this point, RFS alleges only one instance of what is commonly called wage theft, when McCoy submitted the false progress report to RFS's electronic health record system on September 2, 2021. (Doc. 5, pgID 124). It takes more than alleging a single act to invoke the faithless servant doctrine. *See Cheryl & Co. v. Krueger*, 536 F. Supp. 3d 182, 213 (S.D. Ohio 2021) (holding that dishonesty and disloyalty did not permeate an employee's services based on the forwarding of one email and response to one text message).

I therefore grant McCoy's motion to dismiss RFS's claim invoking the faithless servant doctrine without prejudice to RFS's ability to file an amended complaint on the same.

## Conclusion

It is, therefore, ORDERED THAT

1. McCoy's motion to dismiss (Doc. 11) be, and the same hereby is, **granted** with regard to Counts IV, V, and VI and **denied** with regard to Counts I and III;

2. RFS is hereby **granted leave** to amend its counterclaim with regard to Count IV (Fraudulent Misrepresentation) and Count VI (Faithless Servant Doctrine);

3. The clerk shall forthwith schedule a Case Management Conference; and

4. Not later than one week before the conference, the parties shall submit a Report of Parties Planning Meeting.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge